# THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| ROBIN JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. 1:25-cv-01689 |
| v. | ) | |
| | ) | |
| CITY OF CLEVELAND, *et al.*, | ) | |
| | ) | JUDGE SOLOMON OLIVER JR. |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

## THE CITY DEFENDANTS' REPLY IN SUPPORT OF
## MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff Robin Johnson sent personal messages on Facebook to a superior officer, for example, saying his "character is simply disgusting." That superior officer, Sgt. Young, reported it and a police investigation followed. With that investigation pending (and Johson nonetheless receiving her requested transfer), Johnson resigned.

Johnson argues that this investigation plus comments made by Sgt. Young can turn her resignation into a constructive discharge. Not so. The Sixth Circuit has held that an investigation "does not rise to the level of intolerableness necessary to show constructive discharge." *Groening v. Glen Lake Cmty. Schs.*, 884 F.3d 626, 631 (6th Cir. 2018). And Sgt. Young's comments, as alleged by Johnson, lack the consistency or perversity to alter the terms of her employment. Therefore, this Court should exercise supplemental jurisdiction and then grant judgment to the Defendants on all claims.

## I.   <u>BACKGROUND</u>

Plaintiff Robin Johnson is a former employee of the City of Cleveland. (Third Amended Complaint or "TAC," ECF No. 22.)[1] Johnson and a superior officer, Sgt. Young, interacted on Facebook. (TAC, ECF No. 22, ¶ 34; Messages, Ex. 6, PageID # 98.) After these interactions, Johnson viewed Sgt. Young's Facebook post about natural hair. (TAC, ECF No. 22, ¶ 37.) The post encouraged Black women to wear natural hair to "be themselves." (*Id.*, ¶ 26.) Johnson later contacted Sgt. Young. (Message, Ex. 6, ECF No. 1-10, PageID # 110.) She called the post "ignorant, distasteful, and degrading," as well as "messy and childish." (*Id.*).

Even though Sgt. Young asked Johnson to stop contacting him outside of work, she did not. Sgt. Young then completed a "Form-1." (Form 1, Ex. 1, ECF No. 1-5, PageID # 55.) CDP's Internal Affairs Unit started investigating. (TAC, ¶ 65.) Johnson then transferred onto Sgt. Young's shift. (*Id.*, ¶ 106.) Johnson requested this transfer. (Union Letter, Ex. 7, ECF No. 1-12, PageID # 118.)

Johnson resigned about a month after her transfer. (*Id.*, ¶ 166.) After Johnson's resignation, the IA investigation continued. A criminal charge of telecommunications harassment was presented to the prosecutor in January 2025 but no charges were issued. (*Id.*, ¶ 111.) The report eventually concluded that Johnson violated certain work rules. This lawsuit followed.

## II.   <u>ANALYSIS</u>

Because Johnson voluntarily resigned from her employment, this Court should grant judgment to Cleveland on all her claims.

### A. This Court should grant judgment to Cleveland on Johnson's statutory discrimination claim.

---

[1]    Johnson filed a Fourth Amended Complaint. (ECF No. 34.) The Defendants object to this filing because it is contrary to Rule 15. *Nicholson v. City of Westlake*, 20 F. App'x 400, 402 (6th Cir. 2001).

Cleveland argued that Johnson failed to identify comparators and voluntarily resigned so this Court should grant judgment to Cleveland. *See, e.g.*, *Johnson v. Bender Mgmt., LLC*, No. 25-1374, 2025 WL 2742524, at *2 (6th Cir. Sept. 26, 2025). Johnson's claim need only fail on one element and yet fails both.

As for comparators, the Sixth Circuit looks for whether the operative complaint identifies those not in the protected class who were "treated differently and more favorably" than the plaintiff. *Mustafa v. Ford Motor Co.*, No. 24-1763, 2025 WL 2720988, at *5 (6th Cir. Sept. 24, 2025). Here, Johnson makes no mention of other employees who were treated more favorably than her. There are no allegations, for example, that she failed to receive desired training yet some other employee did. (Opp., ECF NO 33, PageID # 664.) This dooms her claim because there is no plausible inference that her training situation was attributable to a protected class. Therefore, this Court should grant judgment to Cleveland.

As for the constructive discharge element, Johnson agrees that she must plausibly allege the *Logan* factors to move her claim forward. (Opp., ECF No. 33, PageID # 673.); *see also Kaminski v. Hillman Grp., Inc.*, No. 1:19-CV-1010, 2021 WL 680110, at *3 (S.D. Ohio Feb. 22, 2021). These factors favor Cleveland: Johnson was promoted beyond her probationary period (TAC, ¶ 22); received a transfer she requested (*id*, ¶ 166; Union email, Ex. 7, ECF No. 1-12, PageID # 118); there was no reduction in salary; no reassignment to a younger supervisor; and no offers of less favorable employment. (*See id.*). These *Logan* factors all favor Cleveland.

Johnson counters with allegations of "administrative badgering." (Opp., ECF No. 33, PageID # 673.) She primarily relies on the investigation that was initiated but not completed before she resigned. (*See id.*). But as the Sixth Circuit has explained, though there is an "inherent tension between an investigating employer and an investigated employee," that "tension does not

rise to the level of intolerableness necessary to show constructive discharge." *Groening v. Glen Lake Cmty. Schs.*, 884 F.3d 626, 631 (6th Cir. 2018). Johnson also argues that being placed on the same shift as Sgt. Young led to her constructive discharge. Yet as she concedes, *she requested the transfer onto his shift.* (Opp., ECF No. 33, PageID # 677.) A granted transfer request cannot support a constructive discharge. *See Partee v. Stehpherson, Inc.*, No. 2:24-CV-02529-MSN-CGC, 2026 WL 548682, at *8 (W.D. Tenn. Jan. 19, 2026) (M.J. Claxton) (citing *DeLeon v. Kalamazoo Cty. Rd. Comm'n*, 739 F.3d 914, 919 (6th Cir. 2013)).

Because Johnson failed to satisfy the *Logan* factors showing constructive discharge, and an employee investigation and requested transfer cannot support a constructive discharge, this Court should grant judgment to Cleveland.

### B. This Court should grant judgment to the individual defendants on any discrimination-based Equal Protection claim.

Because Johnson failed to allege an Equal Protection Claim, or in the alternative, the Defendants are immune, this Court should grant judgment to all defendants.

#### 1. There was no constitutional violation.

There is no dispute that if this Court grants Cleveland judgment on its Title VII claim, then it should also grant judgment to Sgt. Young, Sgt. Lopez, Superintendent Meyer, Ariel Flores, and Chief Dorothy Todd on the Equal Protection claim.

#### 2. Alternatively, there was no constitutional violation plausibly alleged against the Defendants.

Cleveland argued that to seek personal liability there must be unconstitutional conduct alleged against each individual. Yet Johnson concedes that she is proceeding under the "cat's paw" theory of liability, which means Johnson concedes that all defendants except Sgt. Young lacked the required discriminatory animus to be personally liable for a constitutional claim.

(Opp., ECF No. 33, PageID # 677.) This Court should therefore grant judgment to Sgt. Lopez, Mr. Flores, Superintendent Meyers, and Chief Todd.

This leaves Sgt. Young. The Sixth Circuit has not clearly addressed whether there can be personal liability under the cat's paw theory pursuant to § 1983. *Bose v. Bea*, 947 F.3d 983, 991, n.4 (6th Cir. 2020). The Second Circuit concluded § 1983 fails to provide individual liability under the cat's paw theory because it is contrary to *Monell*. *Naumovski v. Norris*, 934 F.3d 200, 221 (2d Cir. 2019) (citing *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 707 (1978)); *see also Lawrence v. Sch. Dist. No. 1*, 560 F. App'x 791, 796 (10th Cir. 2014) (questioning application of cat's paw theory under *Monell*). *But see Taylor v. Ways*, 999 F.3d 478, 487 (7th Cir. 2021). This Court should find that Sgt. Young cannot be held liable for a constitutional violation under § 1983 as it is contrary to *Monell*.

But even assuming the cat's paw theory may impose liability, this Court should still grant judgment to Sgt. Young. First, there is nothing unconstitutional about initiating an investigation. Second, Johnson resigned before the investigation concluded. *See Groening*, 884 F.3d at 631. And as discussed above, Sgt. Young did not cause the adverse action, her resignation. Therefore, this Court should grant judgment to Sgt. Young.

### 3. Alternatively, these defendants are immune.

Johnson only attacks the qualified immunity of Sgt. Young, arguing that, "Weaponizing administrative processes for discriminatory purposes violates established law." (Opp., ECF No. 33, PageID # 674.) Yet the Sixth Circuit has found that there may not be a constitutional violation under the cat's paw theory, so it is not clearly established. *Bose*, 947 F.3d at n.4. Additionally, Johnson failed to identify caselaw showing it is clearly established that it violates the constitution to submit a report as alleged here. So Sgt. Young is entitled to judgment for this reason too.

**C. This Court should grant judgment to Cleveland on any statutory hostile work environment claim.**

As Cleveland argued, because Sgt. Young's social media post and video about natural hair and accompanying video is not the sort of "extreme" conduct courts have found alters an employee's work environment, this Court should grant judgment to Cleveland. *Strickland v. City of Detroit*, 995 F.3d 495, 505 (6th Cir. 2021); *Chinery v. Am. Airlines*, 778 F. App'x 142, 144 (3d Cir. 2019). In response, Johnson concedes she "never viewed said video" while employed by Cleveland. (Opp, ECF No. 33, PageID # 665.) She only viewed the post "regarding Black women taking off their wigs and being themselves." (TAC, ECF No. 22, ¶ 43, PageID # 332.) This post failed to alter the terms and conditions of Johnson's employment as required to state a hostile work environment claim.

Still, Johnson argues that other conduct could be objectively severe or pervasive as to alter the conditions of employment (Opp., ECF No. 33, PageID # 666): Making "flirtatious noises" at the timeclock (TAC, ECF No. 22, ¶ 21, PageID # 328); standing in a doorway and refusing to move (*id.*, ¶ 30); saying, "I know you're a homosexual" and "I know you're really a man" (*id.*, ¶ 32); approaching her desk to "mock a medical condition" (*id.*, ¶ 32); asking, "Are you free that evening?" (*id.*, ¶ 31); using the term "gorgeous" and "dear" in an outside-of-work Facebook message (*id.*, ¶ 33); and saying, "Have a nice day" with an unprofessional tone. (*id.*, ¶ 39).

The Sixth Circuit has emphasized that Title VII is not a general civility code, so allegations of "intimidation, ridicule, and mistreatment," unless based on a protected class and so severe or pervasive as to alter the conditions of employment, fall short. *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 464 (6th Cir. 2000); *see also Johnson v. 212 Fremont Sandusky Wine & Spirit, LLC*, No. 3:23 CV 730, 2025 WL 843390, at *6 (N.D. Ohio Mar. 18, 2025). Some

allegations, such having a nice day, standing in a doorway, and references to a medical condition are unrelated to Johnson's sex and race, so they cannot support a claim. And other conduct, such as the Facebook messages, are off-duty and cannot be considered unlawful harassment. *See Bryant v. City of Cincinnati Fire Dep't*, No. 1:24-CV-119, 2025 WL 860931, at *7, n.17 (S.D. Ohio Mar. 19, 2025) (citing *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 335 (6th Cir. 2008)).

The relevant allegations, in the light most favorable to Johnson, are flirtatious noises, a broad comment about Johnson's sexual orientation, and asking if she is free one time. This fails to state a claim. The Sixth Circuit sets a high bar for hostile work environment: "vague claims that the inappropriate comments about her appearance happened between 10 and 100 times over a 2.5-year period" failed to violate Title VII. *Vinsant v. WNB Grp. LLC*, No. 25-3228, 2026 WL 49931, at *2 (6th Cir. Jan. 7, 2026). This contrasts with a plausibly pleaded complaint, where a supervisor "consistently and continually" directed sexualized comments, including encouraging the employee to have sex on the supervisor's desk. *Bruce v. Adams & Reese*, LLP, No. 25-5210, 2026 WL 523180, at *6 (6th Cir. Feb. 25, 2026). Johnson's relevant allegations here fall short of consistency and severity required to state a claim—Johnson and Sgt. Young even worked on different shifts, limiting their contact.

Because the operative complaint failed to state a claim of unlawful harassment, this Court should grant judgment to Cleveland.

**D. This Court should grant judgment to the individual defendants on any hostile work environment-based Equal Protection claim.**

Because Johnson failed to allege an Equal Protection Claim, or in the alternative, the Defendants are immune, this Court should grant judgment to the Defendants.

7

1. **No constitutional claim.**

Just as Johnson's Title VII hostile work environment claim fails, for the reasons just discussed, so does her parallel Equal Protection claim, and this Court should grant judgment to the Defendants. *See, e.g.*, *Boxill v. O'Grady*, 935 F.3d 510, 520 (6th Cir. 2019).

2. **Alternatively, there was no constitutional violation plausibly alleged against the Defendants.**

Sgt. Lopez, Mr. Flores, Superintendent Meyer, and Chief Todd were uninvolved in the day-to-day interactions with Johnson required for a hostile work environment claim so this Court should grant them judgment. *Cf. Adams v. Obion Cnty., Tennessee*, No. 1:19-CV-1121-STA-DKV, 2020 WL 3036883, at \*6 (W.D. Tenn. June 5, 2020) (citing *Bey v. Falk*, 946 F.3d 304, 315 (6th Cir. 2019)).

3. **Alternatively, the individual defendants are immune.**

As discussed above, vague comments over an extended period time do not violate a constitutional right, and therefore also fail to violate a clearly established constitutional right. *Strickland*, 995 F.3d at 505; *Bruce*, No. 25-5210, 2026 WL 523180, at \*6; *Fullen v. City of Columbus*, 514 F. App'x 601, 608 (6th Cir. 2013). As a result, Sgt. Young is afforded qualified immunity.

E. **This Court should grant judgment on any statutory retaliation claim.**

Because there are no plausible allegations that Johnson suffered a materially adverse employment action in response to protected activity, this Court should grant judgment to Cleveland. *Prida v. Option Care Enters., Inc.*, No. 23-3936, 2025 WL 460206, at \*6 (6th Cir. Feb. 11, 2025).

First, as argued by Cleveland, Johnson failed to engage in protected activity because saying a post is in bad tase is not protected activity, so this Court should grant judgment to

Cleveland. *See, e.g.*, *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir. 1989) (suggesting that a manager is racist is not protected activity). In response, Johnson argues that she told Sgt. Young (and others) that there was an "offensive" statement. (Opp., ECF No. 33, PageID # 668.) But calling a statement "offensive" fails to identify unlawful activity. Johnson's opposition is like the teacher's opposition in *Johnson v. Farmington Pub. Schs.*, 728 F. Supp. 3d 723, 751 (E.D. Mich. 2024). There, an employee called for the termination of a teacher who said the "n-word." The court found that demanding a teacher's termination is not protected activity because refusing to fire a teacher is not "unlawful" activity.

So too, here. Johnson's off-duty Facebook post was not unlawful. To the extent Title VII even extends to off-duty social media posts, it failed to alter the terms of conditions of Johnson's employment. *Chinery*, 778 F. App'x at 144; *Bryant*, 2025 WL 860931, at *7, n.17. In fact, Sgt. Young's commentary on natural hair is likely protected by the First Amendment. *See, e.g.*, *Noble v. Cincinnati & Hamilton Cnty. Pub. Libr.*, 112 F.4th 373, 378 (6th Cir. 2024). Like the security guard's "All Lives Splatter" post that involved protected speech, Sgt. Young's comments on natural hair relate to a matter of public concern[2] and the only operational impact are the "wounded feelings of certain co-workers." *Id.* at 384. Because Johnson failed to oppose unlawful activity, this Court should grant judgment to Cleveland.

Cleveland then argued that Johnson's alleged protected activity was unknown by the appointing authority, the Director of Public Safety, so this Court should grant judgment to Cleveland. Johnson conceded that the Director of Public Safety is the appointing authority and that he was unaware of her protestations. (*See* Opp., ECF No. 33, PageID # 679.) She relies instead on the cat's

---

[2] Natural hair is an issue of importance in the Northeast Ohio community. *See, e.g.*, Kaitlin Durbin, *Cuyahoga County passes CROWN Act protecting Black hairstyles – a first in Ohio*, CLEVELAND.COM, October 15, 2025 available at https://www.cleveland.com/news/2025/10/cuyahoga-county-passes-crown-act-protecting-black-hairstyles-a-first-in-ohio.html

paw theory of liability, which the Sixth Circuit has found may apply in retaliation claims. *Seoane-Vazquez v. Ohio State Univ.*, 577 F. App'x 418, 428 (6th Cir. 2014). To do so, (1) the non-decision maker must take actions intended to cause the materially adverse employment action for the protected conduct; and (2) the retaliatory action must be a "but-for" cause for the materially adverse employment action. *Id.*[3] Johnson has trouble meeting both elements.

Johnson first argues that her transfer was a retaliatory, materially adverse employment action. (Opp., ECF No. 33, PageID # 673.). But a lateral transfer is generally not a materially adverse employment action. *See, e.g.*, *Freeman v. Potter*, 200 F. App'x 439, 443 (6th Cir. 2006). That is what happened here when Johnson received her transfer. (TAC, ¶ 166; Union email, Ex. 7, ECF No. 1-12, PageID # 118.) And even if the transfer here could be materially adverse, Johnson requested it. (*Id.*) So Johnson, not some retaliatory act, caused the transfer, and her claim fails.

Johnson then points to her resignation. As discussed above, Johnson resigned so there was no materially adverse action. She successfully completed her probationary period. (*See* TAC, ¶¶ 22, 166). She received the transfer she wanted. (*See* TAC, ¶ 166; Union email, Ex. 7, ECF No. 1-12, PageID # 118). And Cleveland made every accommodation for her transfer to work, including changing her supervisor. (Email, Ex. 14, ECF No. 1-10, PageID # 171). There are no specific allegations of badgering or other conduct between her transfer and her resignation a month later. (*See* TAC). Therefore, Johnson's resignation was not a materially adverse action. But even if her resignation was a materially adverse action, and even if she resigned because of a pending investigation, an investigation "does not rise to the level of intolerableness necessary to show constructive discharge." *Groening*, 884 F.3d at 631.

---

[3]     The Supreme Court reiterated that a retaliation claim requires a "materially adverse" employment action. *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 357 (2024).

Finally, Johnson points to the results of the investigation. Johnson resigned in December. (TAC, ¶ 110). Yet the report finding that she violated Cleveland's work rules was issued several months later, in February. (*Id.*, ¶ 115). Because the report was issued after her resignation, it could not have caused Johnson's resignation. This too ends her retaliation claim.

Because Johnson need only fail one element of a retaliation claim, yet she misses on all, this Court should grant judgment to Cleveland.

## F. This Court should grant judgment to the individual defendants on any Due Process claim.

Because Johnson failed to allege a Due Process claim, or in the alternative, the Defendants are immune, this Court should grant judgment to all defendants.

### 1. There was no constitutional violation.

As Cleveland argued, Johnson waived any Due Process Clause rights when she resigned. *Kimball v. Vill. of S. Russell*, No. 1:24 CV 17, 2025 WL 418176, at *4 (N.D. Ohio Feb. 6, 2025), *dismissed sub nom. Kimball v. Vill. of S. Russell, Ohio*, No. 25-3138, 2025 WL 2521183 (6th Cir. June 9, 2025) (citing *Rhoads v. Bd. of Educ. of Mad River Local Sch. Dist.*, 103 F. App'x 888, 895 (6th Cir. 2004)). Johnson agrees a resignation would waive these rights, but argues that she was constructively discharged. For all the reasons discussed above, Johnson failed to allege a constructive discharge: Johnson received the transfer she requested (*id.*, ¶ 106; *see also* Ex. 7, ECF No. 1-12, PageID # 118), and having attempted to resign once (*id.*, ¶ 37), understood the nature of her choice. Therefore, Johnson waived any Due Process protection in her employment, and this Court should grant judgment to the Defendants.

11

**2.  Alternatively, no constitutional violation by these defendants.**

In the alternative, no constitutional violation can be tied to the individual defendants so this Court should grant them judgment. In fact, none of the Defendants disciplined Johnson or even had authority to discipline Johnson.

**3.  Alternatively, these defendants are immune.**

In alternative, it is not clearly established that an employee who resigns is entitled to the Due Process protections ordinarily afforded to employees who may be disciplined, this Court should grant judgment to the Defendants.

**G.  This Court should grant judgment on Johnson's name-clearing hearing claim.**

As explained by Cleveland, Johson failed to state a name-clearing claim because she failed to request a name-clearing hearing, the statements were not made in connection with her termination (she had already resigned), related to Johnson's malfeasance, and were not made public by Cleveland. *Quinn v. Shirey*, 293 F.3d 315, 320 (6th Cir. 2002). Or in the alternative, Defendants here are immune because it is not clearly established that a post-resignation investigative report required a name-clearing hearing. *Crosby v. Univ. of Kentucky*, 863 F.3d 545, 556 (6th Cir. 2017).

Johnson fails to argue against qualified immunity (which is dispositive), and then argues only one element: that it would be futile to request a name-clearing hearing. (Opp., ECF No. 33, PageID # 681.) The Sixth Circuit rejected futility as an exception to requesting a name-clearing hearing. *See Kaplan v. Univ. of Louisville*, 10 F.4th 569, 585 (6th Cir. 2021). Therefore, this Court should grant judgment to the Defendants.

**H.  This Court should exercise supplemental jurisdiction and grant judgment to the Defendants.**

12

Johnson has no objection to this Court exercising supplemental jurisdiction (*See* Opp., ECF No. 33, PageID # 678), which would be the most efficient resolution of this litigation.  *See, e.g.*, *Johnson v. City of Cleveland*, No. 1:23-CV-02193, 2024 WL 2134337, at *5 (N.D. Ohio May 13, 2024) (considering R.C. Chapter 4112 and defamation).  Therefore, in resolving the Title VII claim in the Defendants' favor, this Court should resolve any claims under R.C. Chapter 4112 the same way.

As for the defamation claim, that fails too. Johnson focuses on language used in Sgt. Young's Form-1 report: "pursuit," "stalking/pursuit," "abnormal," "unruly," and "paranoid." (Opp., ECF No. 33, PageID # 678.) This is not an actional claim of defamation. As Johnson concedes, Sgt. Young's Form-1 was submitted to police officers and initiated a criminal investigation into the crime of telecommunications harassment. (*Id.*, PageID # 677; *see also* Report, Ex. 11, ECF No. 1-16, PageID # 157.) Under Ohio law, an "absolute privilege" applies to "those who report criminal activity to police officers." *Lasater v. Vidahl*, 2012-Ohio-4918, ¶ 9 (9th Dist.) (citing *M.J. DiCorpo Inc. v. Sweeney*, 69 Ohio St.3d 497, 505, 634 N.E.2d 203 (1994)). Therefore, Sgt. Young's comments cannot be litigated here as he is afforded an absolute privilege for reporting potential criminal activity to police officers. (Report, Ex. 11, ECF No. 1-16, PageID # 157.); *see also Lee v. City of Upper Arlington*, 2003-Ohio-7157, ¶ 19 (10th Dist.) (absolute immunity for reports to police); *see also Stiles v. Chrysler Motors Corp.*, 89 Ohio App.3d 256, 265 (6th Dist. 1993) (statements related to employee discipline subject to collective bargaining subject to absolute privilege).

Alternatively, because Sgt. Young's Form-1 relates to his employment and was made to his employer, he is afforded a qualified privilege. *Gintert v. WCI Steel, Inc.*, 11th Dist. Trumbull No. 2002-T-0124, 2007-Ohio-6737, ¶ 21. Whether a qualified privilege applies turns on the

13

scope of the statement and whether there is "such a relationship between the parties to justify the communication." *Hartman v. Kerch*, 2023-Ohio-1972, ¶¶ 72-74 (8th Dist.) (citation and quotation marks omitted). That is true here. As Johnson alleged, Sgt. Young was one of her superior officers. (TAC, ECF No. 22, PageID # 347, ¶ 124.) And as alleged by Johnson, superior officers have a "mandatory dut[y]" to act when misconduct is observed. (*Id.*, ¶ 180; *see also id.*, ¶ 136.) Here, Sgt. Young's supposedly defamatory statements are in a required report of misconduct. (Form-1, Ex. 1, ECF No. 1-5, PageID # 55.) Because Sgt. Young's report was within the scope of the relationship, he is afforded a qualified privilege, and this Court should grant him judgment.

As for Mr. Flores, Johnson identifies two statements: "unprofessional" and "harassment." (Opp., ECF No. 33, PageID # 678.) Initially, Johnson's claims fail because they are "substantially true" according to the operative complaint. *Swoope v. Osagie*, 2016-Ohio-8046, ¶ 33 (8th Dist.). Mr. Flores identified the unprofessional and harassing conduct as frequent unwanted phone calls and other contact directed to Sgt. Young outside of work. (Flores Report, Ex. 14, ECF No. 1-19, PageID # 186.) This is borne out by the operative complaint's allegations and incorporated documents. This includes texts by Johnson like, the "office is not the same without you here today . . . just thinking of you." (Messages, Ex. 6, ECF No. 1-10, PageID # 100.) She also made personal insults against Sgt. Young, like "You grown and mature??" (*Id.*, PageID # 109.) And conceding that sending messages "isn't a work purpose" but to advise Sgt. Young to "stop letting people get in your head" and that his "character is simply disgusting." (*Id.*, PageID # 110, 111.) Sgt. Young asked Johnson to communicate only during work hours and about professional matters. (*Id.*, PageID # 113.) Yet the messages continued. (*See id.*) And she also called him in the early hours of the morning. (*See* TAC, ECF No. 33, PageID # 339, ¶ 78;

14

*see also id.*, ¶ 148.) Therefore, Mr. Flores' findings were substantially true and this Court should grant judgment to Mr. Flores.

Alternatively, Mr. Flores' comments should be afforded a qualified privilege. Mr. Flores is a Human Resource Professional who works for Cleveland. (*Id.*, PageID # 328, ¶ 18.) His job includes investigating and reporting on allegations of employee misconduct. (*Id.*, ¶ 141.) Therefore, the findings that Johnson was unprofessional and harassing were made within the scope of his employment and he should be afforded a qualified privileged.

Johnson then argues that Chief Todd and Superintendent Meyer "ratified" defamatory statements made by Mr. Flores. (Opp., ECF No. 33, PageID # 678.) Initially, there are no allegations that Chief Todd or Superintendent Meyer could ratify a report made by Mr. Flores. (*See* TAC.) As matter of law, the Division of Police reports to the Department of Public Safety, which is entirely separate from the Department of Human Resources. CLEVELAND MUNI. CODE § 135.09 (Division of Police reports to Department of Public Safety); CLEVELAND MUNI. CODE § 143.01 (Department of Human Resources reports directly to the Mayor). So Chief Todd and Superintendent Meyers have no role in ratifying conduct by a Human Resources employee. But even if they did, as discussed above, the allegations are both substantially true and any ratification occurred would be within the scope of employment, so this Court should grant them judgment too. Johnson fails to argue that any statements made by Sgt. Lopez were defamatory, so this Court should grant judgment to all defendants. (Opp., ECF No. 33, PageID # 678.)

For these reasons, this Court should exercise supplemental jurisdiction and grant judgment to the Defendants on Johnson's R.C. Chapter 4112 and defamation claims.

## CONCLUSION

For these reasons, this Court should grant judgment to the Defendants.

15

Respectfully submitted,

MARK GRIFFIN (0064141)
Director of Law

By:  *s/ Matthew R. Aumann*
    MATTHEW R. AUMANN (0093612)
    AFFAN ALI (0085698)
    Assistant Directors of Law
    City of Cleveland, Department of Law
    601 Lakeside Avenue, Room 106
    Cleveland, Ohio 441144
    Tel:   (216) 664-2675
    Fax:  (216) 664-2663
    MAumann@clevelandohio.gov
    AAli2@clevelandohio.gov

*Attorneys for Defendants City of Cleveland, Sgt. Eugene Young, Sgt. Dahlia Lopez, Ariel Flores, Jennifer Meyer, and Chief Dorothy Todd*

## CERTIFICATE OF SERVICE

I certify the above motion was filed electronically this March 16, 2026.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. I certify this same day a copy of the foregoing was served, as authorized by written consent, by email on the following people:

Ms. Robin E. Johnson
Msintelligentlady2@gmail.com

*Pro Se Plaintiff*

                                       *s/ Matthew R. Aumann*
                                       MATTHEW AUMANN (0093612)
                                       Assistant Director of Law

                                       *One of the Attorneys for Defendants*

16

## LOCAL RULE 7.1 CERTIFICATE

The undersigned certifies that this brief complies with the brief length set by the standard track.

s/ Matthew R. Aumann
MATTHEW AUMANN (0093612)
Assistant Director of Law

*One of the Attorneys for Defendants*